IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ARRAY HOLDINGS INC.,            §
                                §
          Plaintiff,            §
                                §
v.                              §        CIVIL ACTION NO. H-12-366
                                §
SAFOCO, INC., MCAFEE & TAFT,    §
MICHAEL LABRIE, KENT WATTS,     §
HARRY JOHNSON, and MICHAEL      §
JOHNSON,                        §
                                §
          Defendants.           §

## MEMORANDUM AND ORDER

Pending are Defendants Harry Johnson's, Michael Johnson's, and Kent Watts's Motion for Summary Judgment (Document No. 51)(filed under seal), Defendant Safoco, Inc.'s Motion to Dismiss (Document No. 48), and Defendants McAfee & Taft's and Michael LaBrie's Motion to Dismiss (Document No. 52).[1]  After carefully considering the motions, responses, replies, surreplies, and applicable law, the Court concludes as follows.

## I.  Background

Plaintiff Array Holdings Inc. ("Plaintiff") is a manufacturer and distributor of gate valves, actuators and other flow control

---

[1] Pending also is Plaintiff's Motion for Partial Summary Judgment as to the Per Se Antitrust Violations (Document No. 124). Given the Court's finding below that Plaintiff has failed to state antitrust claims upon which relief can be granted, this motion is DENIED.

products for oil and natural gas applications.[2]  Plaintiff was formed by Cadent Energy Partners ("Cadent") in order to acquire substantially all the assets and continue the business operations of Array Products, LLC ("Array Products").[3]  The asset purchase deal was closed in November 2005.[4]

Defendant Safoco Inc. ("Safoco") is the owner of five patents for valve actuators used for the control of gate valves ("the Safoco patents").[5]  On June 13, 2005, Safoco filed suit against Array Products for infringement of one of the Safoco patents.[6]  The parties settled the case and signed a settlement agreement on December 14, 2005 ("the Safoco Settlement Agreement").[7]

_____

[2] Document No. 34 ¶ 1 (2d Am. Complt.).

[3] Document No. 65 at 1-3.

[4] Document No. 34 ¶ 15.

[5] Id. ¶¶ 4-9.  The five Safoco patents are US 6,089,531 ("the '531 patent); US 6,250,605 ("the '605 patent); US 6,450,477 ("the '477 patent); US 6,854,704 ("the '704 patent); and US 7,028,986 ("the '986 patent").  Id. at 1.  Each is entitled "Valve actuator apparatus" and lists Terry Young as its inventor.  Id. ¶¶ 4-8.

[6] Document No. 48 at 3.  Safoco filed suit for infringement of the '704 patent, but asserts that it anticipated adding claims for infringement of the '531, '605, and '477 patents at a later date.  Id. at 3 n. 9.

[7] Id. at 3.  The Safoco Settlement Agreement was signed by Dave Lymberopoulos, President, on behalf of Safoco and Michael A. Johnson, Vice-President, on behalf of "Array Products Company, L.L.C."  Document No. 66-5 at 8 (SEALED).  The agreement was effective as of June 1, 2005.  Id. at 1.

Defendants Michael Johnson, Harry Johnson, and Kent Watts ("the Manager Defendants") were managers of Array Products, and became officers of Plaintiff upon consummation of the Cadent/Array Holdings asset purchase.[8]  Plaintiff alleges that the Manager Defendants--as officers first of Array Products and then later of Plaintiff Array Holdings--caused Plaintiff to enter into the Safoco Settlement Agreement "while fully aware that the terms were illegal."[9]

To defend Safoco's patent infringement case, Array Products retained as its attorneys Defendants McAfee & Taft and Michael LaBrie ("the McAfee Defendants").  Before the Safoco Settlement Agreement was signed, and upon consummation of the Array Products/Cadent-Array Holdings asset sale/acquisition, the McAfee Defendants became counsel for Plaintiff.[10]

Plaintiff alleges that the 2005 infringement suit brought by Safoco against Array Products was a sham, intended to force Array Products, and later Plaintiff, to enter the Safoco Settlement Agreement, which contains provisions in violation of antitrust laws.[11]  Plaintiff contends that the McAfee Defendants and the

---

[8] Document No. 65 at 3.

[9] Id. at 4.

[10] Document No. 34 ¶ 11.

[11] See id. ¶¶ 37, 39.  Plaintiff alleges that the Safoco Settlement Agreement violated antitrust laws in the following particulars: (1) "the usurious license fee," (2) the requirement

Manager Defendants, who negotiated the Safoco Settlement Agreement on behalf of Array Products and Plaintiff, were aware that its terms were illegal.[12]

In 2009-2010, the Manager Defendants left their employment by Plaintiff and formed a competing company, Omni Valve Company, LLC ("Omni").[13]   Plaintiff subsequently sued Omni and the Manager Defendants on August 1, 2011,[14] alleging breach of contract, tortious interference, misappropriation of trade secrets, unfair competition, disparagement, conspiracy, and breach of fiduciary duty.[15]   On March 21, 2012, the parties entered a Confidential Settlement Agreement and Release ("the Omni Settlement Agreement"), and the lawsuit was dismissed with prejudice.[16]

Plaintiff now asserts claims against Safoco for antitrust violations, false patent marking, fraudulent inducement, and

---

that Plaintiff pay license fees on worldwide sales, (3) the requirement that Plaintiff "mark all of its products in three categories with the Safoco Patent numbers regardless of whether the scope of the claims of the Safoco Patents cover the products," and (4) the requirement that Plaintiff pay a license fee on design-around products.  Id. ¶ 20.

[12] Document No. 65 at 4.

[13] Document No. 71 at 6 n. 9.

[14] Id. at 9.  The suit was brought in the 215th Judicial District of Harris County, Texas, Cause No. 2011-45276.  Document No. 51 at 1 (SEALED).

[15] Document No. 71 at 9.

[16] Document No. 51 at 2 (SEALED).

4

duress; and also seeks a declaratory judgment that the Safoco Settlement Agreement is void, as well as declaratory judgments of non-infringement and unenforceability as to each of the Safoco patents. Additionally, Plaintiff sues the McAfee Defendants and Manager Defendants for antitrust violations, false patent marking, fraudulent inducement, and duress; and alleges against only the McAfee Defendants a claim for breach of fiduciary duty. Defendant Safoco and the McAfee Defendants separately move to dismiss several of Plaintiff's claims, and the Manager Defendants move for summary judgment on the grounds that Plaintiff's Release in the Omni Settlement Agreement precludes the present suit.[17]

## II. The Manager Defendants' Motion for Summary Judgment

### A. Summary Judgment Standard

Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998). A party opposing a properly supported motion for summary judgment may not rest upon

---

[17] Document Nos. 48, 51, and 52.

mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice. Id. "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." Id. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . .; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Id. 56(c)(3).

In considering a motion for summary judgment, the district court must view the evidence "through the prism of the substantive evidentiary burden." Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2513 (1986). All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986). "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper. Kelley v. Price-Macemon, Inc., 992 F.2d 1408, 1413 (5th Cir. 1993). On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." Id. Even if the

6

standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial."   <u>Anderson</u>, 106 S. Ct. at 2513.

B.   <u>Analysis</u>

The Manager Defendants move to dismiss all claims against them and to recover on their breach of contract counterclaim against Plaintiff, based upon Plaintiff's release ("Release") of all claims against the Manager Defendants contained in the Omni Settlement Agreement.   The Release is in paragraph 7 of the Omni Settlement Agreement, which reads as follows:

> **Release by Array of Omni and Individual Defendants.**
> Array does hereby irrevocably release and forever discharge Omni, Individual Defendants, and all their representatives, attorneys, and insurers from all actions, suits, causes of action, claims, counterclaims, cross-claims disputes, demands, judgments, damages, losses, liabilities, payments, costs, fees, compensation and expenses (including attorneys' fees and costs) that were brought or could have been brought in the Lawsuit, or in a separate action, including claims of every kind, absolute or contingent, direct or indirect, known or unknown, that could have been asserted or that are based upon any alleged facts known to Array or those that could have been known to Array.   This release excludes a release of any claims that seek to enforce any provisions of this contractual Settlement Agreement and Release or the provisions of any written agreement entered into pursuant to this Agreement, including the Note, the Inventory Security Agreement or any Guaranty Agreement. The Parties will sign an agreed motion to dismiss with prejudice any and all claims asserted in the Lawsuit.

Although Plaintiff alleges against the Manager Defendants both federal and state claims, the parties both rely on Texas law for interpretation of the Release.  Indeed, the Omni Settlement Agreement specifies that it will be "governed by and construed, enforced, and performed in accordance with the laws of the state of Texas, without giving effect to principles of conflicts of laws . . . ."  As it happens, the Court finds no substantive difference between the application of either federal or Texas law in construing the Release with respect to Plaintiff's federal claims.

Plaintiff alleges against the Manager Defendants antitrust claims under the Sherman Antitrust Act, false patent marking claims with regard to Safoco patents, fraudulent inducement claims with regard to Plaintiff's execution of a 2005 lawsuit settlement agreement between Safoco and Plaintiff, and duress to induce Plaintiff to agree to the 2005 Safoco/Plaintiff lawsuit settlement agreement and its arbitration clause.  The Manager Defendants rely upon the Release contained in the 2012 Omni Settlement Agreement as a bar to all such claims and as the basis for its counterclaim that Plaintiff breached the 2012 Omni Settlement Agreement by bringing suit against them.  All of Plaintiff's claims against the Manager Defendants arise out of their employment relationship with Plaintiff in 2005 when the Manager Defendants had a role in negotiating and concluding the Safoco Settlement Agreement to end Safoco's patent infringement lawsuit against Plaintiff.

8

After Plaintiff's settlement in 2005 of Safoco's patent infringement case, the Manager Defendants continued for several years in the employ of Plaintiff.   In 2009-2010, however, the Manager Defendants and Plaintiff agreed to separation agreements pursuant to which the Manager Defendants left the employment of Plaintiff.   The Manager Defendants then formed their own company, Omni Valve Company, LLC, which also sells actuators.   This led to Plaintiff's 2011 lawsuit against the Manager Defendants for breach of contract, tortious interference, misappropriation of trade secrets, unfair competition, disparagement, conspiracy, and breach of fiduciary duty.   The 2011 case settled on March 21, 2012, the effective date of the Omni Settlement Agreement and its Release, pursuant to which the 2011 lawsuit was dismissed with prejudice. The claims now filed by Plaintiff against the Manager Defendants were all quite aged before Plaintiff brought its 2011 lawsuit which settled in 2012.

As already observed, Plaintiff's Release expressly released and discharged the Manager Defendants from "all claims," . . . and "claims of every kind" that "could have been brought in the [2011] Lawsuit or in a separate action."   The breadth of this Release encompassed whatever federal and state claims Plaintiff had based on events going back to 2005 (and before) and coming forward to the date of the 2012 settlement Release.   *See* Redel's Inc. v. Gen. Elec. Co., 498 F.2d 95, 100 (5th Cir. 1974) (holding release of

"all claims . . . and liabilities, if any there be, as of the date of the execution of this agreement . . ." barred antitrust claims); Ingram Corp. v. J. Ray McDermott & Co., Inc., 698 F.2d 1295 (5th Cir. 1983) (holding release barred antitrust claims).

The summary judgment evidence reflects that the parties to the 2011 Lawsuit and the Omni Settlement Agreement were knowledgeable and experienced business persons who made representations that they had read the Omni Settlement Agreement (which included the Release), understood its provisions, and had the opportunity to consult counsel.[18]   Plaintiff now argues that it did not have knowledge of its antitrust and other claims against the Manager Defendants when it signed the Omni Settlement Agreement and, hence, asserts it should be excused from being held to the Release.   The Release, however, expressly includes within its scope not only "all claims," but also "claims of every kind, absolute or contingent, direct or indirect, **known or unknown** . . . ."[19] (emphasis added). A party agreeing to release unknown claims assumes a risk, of course, but it is a measured risk weighed in the balance of also achieving the benefits of a comprehensive settlement of all known claims on terms then thought to be acceptable.   The express language of the Release itself precludes Plaintiff from claiming it is not bound because it did not know of a claim that it had.   *See*

---

[18] Document No. 51, ex. 1 § 16 (SEALED).

[19] Id., ex. 1 § 7 (SEALED).

10

Ingram, 698 F.2d at 1312 (plaintiff could not escape the validity of a release by asserting ignorance of its antitrust claims); White v. Grinfas, 809 F.2d 1157, 1160 (5th Cir. 1987) ("As a matter of Texas law, in the absence of fraud, settlement agreements and releases are a complete bar to any later action based on matters included therein."); Mem'l Med. Ctr. of E. Tex. v. Kessler, 943 S.W.2d 433 (Tex. 1997) (per curiam) (holding that release physician entered into as part of settlement in action against hospital for revoking his privileges barred subsequent suit for toxic exposure during his employment, because he had released all claims relating to his relationship with the hospital).[20]

Although Plaintiff never alludes to the Omni Settlement Agreement in its Second Amended Complaint, much less claim that the Manager Defendants somehow fraudulently induced Plaintiff to settle its 2011 Lawsuit against them by failing to disclose alleged antitrust violations dating back to the 2005 Safoco Settlement

---

[20] See also Keck, Mahin & Cate v. Nat'l Union Fire Ins. Co. Of Pittsburgh, Pa., 20 S.W.3d 692, 698 (Tex. 2000) (While Texas law requires a release to 'mention' the claim to be effective, "[i]t does not require that the parties anticipate and identify each potential cause of action relating to the release's subject matter. . . . a valid release may encompass unknown claims . . .") (citations omitted). The subject matter of the 2011 lawsuit resolved by the Omni Settlement Agreement and its Release, of course, was centered upon the former employment relationships between Plaintiff and the Manager Defendants, and a host of contract and tort disputes that arose out of those employment relationships, separation agreements, and post-employment conduct. Plaintiff's claims against the Manager Defendants in the instant lawsuit also all arise out of those identical troubled employment relationships that ended in 2009-10.

Agreement, Plaintiff now argues that this should be reason to deny the Motion for Summary Judgment. Plaintiff relies on the declaration of its Chief Executive Officer, Michael McGovern, who states:

> [I]n June of 2012, I was informed by my counsel that Michael Johnson signed a Declaration in 2009 wherein he admitted to knowing of the antitrust violations in the Safoco Settlement Agreement and only signing it to close the *de facto* merger with Cadent Energy Partners.

Based on this information from his lawyer, Mr. McGovern declares that he is "convinced" that "the Omni Settlement Agreement was an attempt by the Former Manager Defendants and the Taft Defendants to obtain a release of their fraudulent and anticompetitive actions during the negotiation and execution of the Safoco Settlement Agreement."[21]

Mr. McGovern's being "convinced" that the Manager Defendants had additional reasons to settle Plaintiff's 2011 Lawsuit against them is simply a conclusory statement. Plaintiff has provided no summary judgment evidence that Defendant Michael Johnson (one of the Manager Defendants)--who made the 2009 Declaration in an unrelated lawsuit criticizing Safoco's conduct and settlement negotiations with Plaintiff--owed any fiduciary duty to Plaintiff in 2012 when Plaintiff agreed to the Omni Settlement Agreement. To the contrary, the uncontroverted summary judgment evidence is that

---

[21] Document No. 71, ex. 2 at ¶ 8.

Defendant Michael Johnson and Plaintiff had severed their employee/employer relationship two or three years before the Omni Settlement Agreement was executed, and that in 2012 Michael Johnson had no duty to Plaintiff--while defending a lawsuit brought against him by Plaintiff--to disclose to Plaintiff any supposed antitrust claim that Plaintiff might have against Defendant Johnson from events in 2005 when he helped to obtain a settlement for Plaintiff of the Safoco patent infringement lawsuit. Ingram, 698 F.2d at 1315 ("Parties bargaining at arm's length who are not in a fiduciary relationship with one another are not required to make known all possible claims against one another.").[22]

Finally, in the Evidentiary Supplement to its Sur-Reply, Plaintiff cites deposition testimony of Defendant Harry Johnson to argue that Plaintiff was "not aware of the anti-competitive terms of the [2005] Safoco settlement agreement until on or after May 31, 2012" and hence the Omni Settlement Agreement did not release the former Manager Defendants of the antitrust claims. Plaintiff points to Johnson's November 29, 2012 deposition in which Johnson testified that he had provided to Cadent (Plaintiff's parent

_____

[22] Plaintiff's argument that the Motion for Summary Judgment should be denied because Plaintiff was under "adverse domination" is nothing short of frivolous. Plaintiff and the Manager Defendants agreed to separation agreements in 2009-10, and thereafter the Manager Defendants had no role in Plaintiff's business. When the Manager Defendants entered into the Omni Settlement Agreement with Plaintiff in 2011, the Manager Defendants were *counter*-parties to Plaintiff, and in no way had domination over Plaintiff.

company, which created and caused Plaintiff to acquire the assets of the former Array Products) all of the information concerning the Safoco Settlement Agreement all through the settlement process, that he believes that he sent to Cadent a final copy of the Safoco Settlement Agreement, but could not verify such, did not specifically recall sending it, did not recall how it might have been transmitted, and that he believed that the Board of Array Holdings received a copy of the Safoco Settlement Agreement after the December 14, 2005 settlement was consummated.  Viewed in the light most favorable to the non-movant, however, and drawing the inference that Defendant Johnson did not provide the Safoco Settlement Agreement to Cadent or to Plaintiff's Board of Directors, there is no summary judgment evidence that Plaintiff's Board of Directors and Cadent would not have approved the 2005 settlement set forth on the allegedly anti-competitive terms contained in the Safoco Settlement Agreement, or that Cadent would not have proceeded to acquire for Plaintiff the assets of the former Array Products Company.  In sum, there is no summary judgment evidence sufficient to raise a genuine issue of material fact that Plaintiff, when it agreed to the Omni Settlement Agreement in 2012, which resolved Plaintiff's 2011 case against the Manager Defendants, was fraudulently induced to do so by the Manager Defendants, or by Defendant Johnson himself, by his not making disclosures of details of events occurring seven years

14

before when the Safoco Settlement Agreement was negotiated, what its terms were, and how it was all documented at the time with his superiors in the management of Plaintiff and of Cadent. *See* Ingram, 698 F.2d at 1314-15 (plaintiff could not avoid release where it failed to provide evidence to support its claim of fraudulent inducement.).   The Manager Defendants' Motion for Summary Judgment is granted that Plaintiff take nothing on its claims against them, and the Manager Defendants' Motion for Summary Judgment on their counterclaim is granted, and Plaintiff is adjudged liable to the Manager Defendants for breach of the Omni Settlement Agreement and Plaintiff's Release contained therein. Remaining to be tried on the counterclaim is the amount of damages that the Manager Defendants are entitled to recover from Plaintiff.

### III. Safoco's Motion to Dismiss

Safoco moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing that Array Holdings lacks standing to bring the claims in its Second Amended Complaint,[23] and Safoco and the McAfee Defendants move to dismiss for failure to state a claim upon which relief may be granted pursuant to Rules 12(b)(6).

---

[23] Document No. 48 at 5-6.

15

A.  Standing

Under Federal Rule of Civil Procedure 12(b)(1), a party can seek dismissal of an action for lack of subject matter jurisdiction.  The plaintiff, as the party asserting jurisdiction, "constantly bears the burden of proof that jurisdiction does in fact exist."  Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001).  "Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief."  Id.

A party makes a 'facial attack' on the court's subject matter jurisdiction when it files a Rule 12(b)(1) motion unaccompanied by supporting evidence, challenging the court's jurisdiction based solely on the pleadings.  Paterson v. Weinberger, 644 F.2d 521, 523 (5th Cir. 1981).  In analyzing a facial attack, "the trial court is required merely to look to the sufficiency of the allegations in the complaint because they are presumed to be true."  Id.  If the allegations sufficiently allege jurisdiction, the court must deny the motion.  Id.  Alternatively, a party makes a factual attack on subject matter jurisdiction by submitting evidence.  Id.  In a factual attack, "plaintiff is also required to submit facts through some evidentiary method and has the burden of proving by a preponderance of the evidence that the trial court does have subject matter jurisdiction."  Id.

16

Safoco alleges that it entered into the Safoco Settlement Agreement with Array Products, not Array Holdings, and therefore, Plaintiff does not have standing to bring fraud and duress claims against Safoco.[24]  Safoco asserts that to the extent Plaintiff is alleging that Array Products assigned its fraud and duress claims to Plaintiff, those claims are not cognizable in this Court because such claims are not assignable under Texas law.[25]  Safoco does not attach a copy of the Safoco Settlement Agreement in support of its 12(b)(1) motion, and therefore makes only a facial attack on Plaintiff's standing.  Hence, the Court looks only to the sufficiency of the Complaint.  *See* Paterson, 644 F.2d at 523.[26]

The Complaint states that the Asset Purchase Agreement between Array Products and Plaintiff was made effective as of November 4, 2005,[27] and that Plaintiff and Safoco entered into the Safoco Settlement Agreement on or about December 14, 2005.[28]  Furthermore, the Complaint contends that Plaintiff was "fraudulently induced"

---

[24] Id.

[25] Id. at 5.

[26] Plaintiff attaches a copy of the Safoco Settlement Agreement in its opposition to Safoco's motion.  This is not considered because Safoco makes only a facial attack on Plaintiff's standing. If it were considered, however, the result would be the same because the Agreement defines "Array" as including Array Holdings. *See* Document No. 66-5 at 1.

[27] Document No. 34 ¶ 15.

[28] Id. ¶ 109.

and "induced under duress" to enter the Safoco Settlement Agreement.[29]  The Complaint sufficiently alleges that Plaintiff is a party to the Safoco Settlement Agreement so as to survive a facial attack on Plaintiff's standing.  Safoco's Motion to Dismiss for lack of subject matter jurisdiction is denied.

B.   Failure to State a Claim

   1.   Legal Standard

   Rule 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).  When a district court reviews the sufficiency of a complaint before it receives any evidence either by affidavit or admission, its task is inevitably a limited one.  *See* Scheuer v. Rhodes, 94 S. Ct. 1683, 1686 (1974).  The issue is not whether the plaintiff ultimately will prevail, but whether the plaintiff is entitled to offer evidence to support the claims.  Id.

   In considering a motion to dismiss under Rule 12(b)(6), the district court must construe the allegations in the complaint favorably to the pleader and must accept as true all well-pleaded facts in the complaint.  *See* Lowrey v. Tex. A&M Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997).  To survive dismissal, a complaint must plead "enough facts to state a claim to relief that

---

   [29] Document No. 34 ¶¶ 119, 123, 127, 131.

18

is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 127 S. Ct. 1955, 1974 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009).  While a complaint "does not need detailed factual allegations . . . [the] allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." <u>Twombly</u>, 127 S. Ct. at 1964-65.

   2.   Analysis

   As the claims alleged against Safoco and the McAfee Defendants are complex and interrelated, they are analyzed together.  A review of the Second Amended Complaint reveals numerous defects.

   First, Plaintiff's "Count 1: Tying," for "Unlawful Tying and Conspiracy," fails to state a claim for tying under Section One of the Sherman Act, or for conspiracy.[30]  Tying exists when a seller refuses to sell a desired product unless the buyer also agrees to purchase a second, undesired product.  <u>United Farmers Agents Ass'n, Inc. v. Farmers Ins. Exch.</u>, 89 F.3d 233, 235 n.2 (5th Cir. 1996).

---

   [30] The Complaint states no facts to support a conspiracy claim. <i>See</i> <u>Twombly</u>, 127 S.Ct. at 1966 (a naked allegation of conspiracy, without more, is not sufficient to state a claim under Section One).

The desired product is the 'tying' product and the second product is the 'tied' product.  Id.  Plaintiff asserts that the "tied product is the grant of a license under the Safoco Patents," and "the tying product is the requirement that licensees pay a royalty on products regardless of whether they constitute design around products or are even covered by the Safoco Patents."[31]  This formulation--without any identifiable product--does not state a valid tying claim.  Moreover, Plaintiff has not attempted to define a market for the alleged tying product.  *See* Ill. Tool Works Inc. v. Indep. Ink, Inc., 126 S.Ct. 1281, 1293 (2006) ("[I]n all cases involving a tying arrangement, the plaintiff must prove that the defendant has market power in the tying product.").

Plaintiff has also failed to state viable claims for monopolization and attempted monopolization.[32]  A prerequisite to succeeding on either a completed or attempted monopolization claim

---

[31] Document No. 34 ¶ 72.  In its Response, Plaintiff inverts these, stating that the tying product is "the Safoco Settlement Agreement with the license grant under the Safoco Patents" and the tied product includes the requirements of that Agreement.  Document No. 65 at 12-13.  Although Plaintiff's latter formulation makes more sense, Plaintiff has still failed to delineate relevant product markets for both the tying and tied products.  *See* Chawla v. Shell Oil Co., 75 F.Supp.2d 626, 636 (S.D. Tex. 1999) (Atlas, J.) ("To analyze a tying claim, the relevant product market for both the tying and tied products must be identified.") *See also* id. at 643 ("There can be no tying arrangement unless there is a distinct demand for the tied product.") (quotations omitted).

[32] Document No. 34 ¶¶ 90-103.  Section Two of the Sherman Act forbids monopolization or attempted monopolization of "any part of the trade or commerce among the several States . . . ." 15 U.S.C. § 2.

under Section Two is proof of the relevant market.  C.E. Servs., Inc. V. Control Data Corp., 759 F.2d 1241, 1244 (5th Cir. 1985). A relevant market includes all products that are reasonably interchangeable.  United States v. E.I. DuPont de Nemours & Co., 76 S. Ct. 994, 1007 (1956). Plaintiff states that it has appropriately defined the market because the Complaint lists "a number of features not readily available with other actuators."[33] However, "[m]erely asserting that a commodity is in some way unique is insufficient to plead a relevant market."  B.V. Optische Industrie De Oude Delft v. Hologic, Inc., 909 F.Supp. 162, 171 (S.D.N.Y. 1995).  *See also* E.I. du Pont, 76 S.Ct. at 1006-07 ("But where there are market alternatives that buyers may readily use for their purposes, illegal monopoly does not exist merely because the product said to be monopolized differs from others.  If it were not so, only physically identical products would be a part of the market.").[34]

Plaintiff's antitrust claims also fail as to the McAfee Defendants because Plaintiff's Complaint does not allege that these

---

[33] Document No. 34 ¶ 32.

[34] *See also* Apani Sw., Inc. v. Coca-Cola Enters., Inc., 300 F.3d 620, 628 (5th Cir. 2002) ("Where the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor, the relevant market is legally insufficient, and a motion to dismiss may be granted.")

defendants engaged in policy decisions so as to render them liable under the antitrust laws.  *See* <u>Brown v. Donco Enters., Inc.</u>, 783 F.2d 644, 646-47 (6th Cir. 1986) ("[T]o subject an attorney to individual liability under the antitrust laws, the plaintiff must plead and prove that the defendant attorney exerted his power and influence so as to direct the corporation to engage in the complained of acts for an anticompetitive purpose.").

Plaintiff fails to allege sufficient facts to state a claim for fraudulent inducement and, specifically, has not alleged the particulars of any claimed misrepresentations or omissions by Defendants that were made with the intent that they be relied upon or that Plaintiff did indeed rely upon them.  *See* <u>Kevin M. Ehringer Enters., Inc. v. McData Servs. Corp.</u>, 646 F.3d 321, 325 (5th Cir. 2011) (To state a claim for fraudulent inducement under Texas law, a plaintiff must prove: (1) a material misrepresentation; (2) that is false; (3) when the defendant made the representation, he knew it was false or he made it without knowledge of its truth; (4) the defendant intended that plaintiff would rely on the representation, and plaintiff did; and (5) the defendant's actions caused injury).

Plaintiff similarly fails to plead facts sufficient to state a claim for duress.  Plaintiff does not identify what unlawful action(s) taken by Safoco constituted duress, or the specifics of what restraint was imposed or imminently threatened by Defendants that left Plaintiff without a present means of protection.  *See*

22

Wright v. Sydow, 173 S.W.3d 534, 544 (Tex. App.–Houston [14th Dist.] 2004, pet. denied) (to state a claim for economic duress, the following elements must be present: "(1) a threat to do something a party has no legal right to do, (2) an illegal exaction or some fraud or deception, and (3) an imminent restraint that destroys the victim's free agency and leaves him without a present means of protection."). To be sure, Safoco's continued prosecution of its infringement suit against Plaintiff states no claim for duress upon which relief can be granted. See id. ("When a party making a demand has to resort to the courts to enforce the demand, no duress occurs–even if the demand is wrongful or unlawful–because the courts provide the victim with adequate protection.").[35]

Plaintiff's patent marking claims are also deficient. The Complaint states that Safoco, the patentee, agreed to the alleged false marking when it entered into the Safoco Settlement Agreement. Accordingly, such marking was not done "without the consent of the patentee" so as to state a claim for false patent marking. See 35 U.S.C.A. Section 292(a). Moreover, the Complaint contains no

---

[35] Document No. 34 ¶ 131. Plaintiff alleges that it was "induced under duress by Safoco, McAfee & Taft, [and] Michael LaBrie . . . to agree to the Settlement Agreement through [Defendants'] illegal, unconscionable, sham litigation and/or anticompetitive conduct as described herein," that the duress "was of such a nature and magnitude" that Plaintiff agreed to the Safoco Settlement Agreement, and that Plaintiff would not have entered the Agreement "absent the duress." Id. ¶¶ 127, 131. These allegations are insufficient to state a claim for duress as "a formulaic recitation of the elements of a cause of action will not do." Twombly, 127 S. Ct. at 1965.

allegations that the McAfee Defendants marked or affixed any patents on any products, much less that they did so with an intent to deceive.  *See* <u>Juniper Networks, Inc. v. Shirley</u>, 643 F.3d 1346, 1350 (Fed. Cir. 2011) (the elements of a false marking claim are (1) marking an unpatented article and (2) intent to deceive the public).

Plaintiff's breach of fiduciary duty claim against the McAfee Defendants also fails because Plaintiff does not allege facts to show that the McAfee Defendants received an improper benefit from their supposed breach of fiduciary duty.  *See* <u>Murphy v. Gruber</u>, 241 S.W.3d 689, 693 (Tex. App.–Dallas 2007, pet. denied).  The essence of Plaintiff's allegations is that the McAfee Defendants' representation "fell below the quality required under the law," and thus, Plaintiff may have intended a claim for legal malpractice, although that would be barred by the two years statute of limitations.  <u>Id.</u>, 241 S.W.3d at 699.  A client cannot turn what really is a negligence claim into a claim for breach of fiduciary duty.[36]

C.   <u>Request to Replead</u>

Plaintiff has requested leave to replead and, indeed, "leave to amend 'shall be freely given when justice so requires.'"  *See*

---

[36] Most events alleged as the basis of Plaintiff's theories of action are quite dated, but questions of limitations, if pled, are generally better considered when evidence is presented.

<u>Foman v. Davis</u>, 83 S. Ct. 227, 230 (1962) (quoting FED. R. CIV. P. 15(a)).  Accordingly, Plaintiff's claims against Safoco and the McAfee Defendants are conditionally dismissed unless Plaintiff, within fourteen (14) days after the entry of this Order, files a more definite statement in the form of a Third Amended Complaint that alleges a claim upon which relief can be granted.

## V.  <u>Order</u>

Accordingly, it is

ORDERED that Defendants Harry Johnson's, Michael Johnson's, and Kent Watts's Motion for Summary Judgment (Document No. 51-SEALED) is GRANTED, and all claims made by Plaintiff Array Holdings Inc. against Defendants Harry Johnson, Michael Johnson, and Kent Watts are DISMISSED on the merits with prejudice; and Plaintiff Array Holdings, Inc. is ADJUDGED liable to Counterclaimants Harry Johnson, Michael Johnson, and Kent Watts for breach of the Omni Settlement Agreement and Release.  Remaining to be tried on the counterclaim is the amount of damages that Counterclaimants are entitled to recover from Counterdefendant Array Holdings, Inc.  It is further

ORDERED that Defendant Safoco, Inc.'s Motion to Dismiss (Document No. 48) and Defendants McAfee & Taft's and Michael LaBrie's Motion to Dismiss (Document No. 52) are both CONDITIONALLY GRANTED and Plaintiff's claims against Defendant Safoco, Inc. and

Defendants McAfee & Taft and Michael LaBrie will be DISMISSED with prejudice without further order of the Court unless Plaintiff, within fourteen (14) days after the date of the entry of this Order, files a more definite statement in the form of a Third Amended Complaint against one or more of these Defendants *only*, bearing in mind the requirements of Federal Rule of Civil Procedure 11(b).

The Clerk shall notify all parties and provide them with a true copy of this Order.

SIGNED at Houston, Texas, on this 11th day of June, 2013.

_____
        EWING WERLEIN, JR.
    UNITED STATES DISTRICT JUDGE

26